2022 IL App (1st) 200302-U

No. 1-20-0302

Third Division
September 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) <br> ) <br> ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) <br> ) | No. 09 CR 13719 |
| v. | ) <br> ) | |
| | ) | The Honorable |
| ANTOINE ATKINS, | ) <br> ) | Domenica A. Stephenson, <br> Judge Presiding. |
| Defendant-Appellant. | ) <br> ) | |

---

JUSTICE REYES delivered the judgment of the court.
Justices Gordon and Burke concurred in the judgment.

**ORDER**

¶ 1      *Held:* The circuit court's dismissal of defendant's postconviction petition at the second stage is reversed, where defendant has established that postconviction counsel was ineffective through his failure to attach evidentiary support to the claims raised in the petition.

¶ 2      In 2009, defendant Antoine Atkins (defendant) allegedly pointed a firearm at a Chicago police officer, resulting in defendant being shot in the wrist by the officer. After a jury trial, defendant was convicted of aggravated assault of a peace officer (720 ILCS 5/12-2(a)(6) (West 2008)) and two counts of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West

2008)) and was sentenced to 12 years in the Illinois Department of Corrections (IDOC). Defendant's conviction was affirmed on appeal. See *People v. Atkins*, 2016 IL App (1st) 151221-U. Defendant subsequently retained private counsel and filed a postconviction petition, alleging ineffective assistance of trial counsel and actual innocence. The petition advanced to the second stage, where the State filed a motion to dismiss. The circuit court dismissed the petition, finding that defendant's petition lacked the necessary evidentiary support. Defendant now appeals, claiming that his postconviction counsel failed to provide him with reasonable assistance during the postconviction proceedings. For the reasons set forth below, we reverse the circuit court's dismissal of defendant's postconviction petition and remand the matter to the circuit court for further second-stage proceedings.

¶ 3                                BACKGROUND

¶ 4        A detailed recitation of the facts underlying defendant's conviction is contained in our earlier decision. See *Atkins*, 2016 IL App (1st) 151221-U, ¶¶ 4-61. We repeat here only those facts necessary to an understanding of the issues raised on this appeal.

¶ 5                             *Trial Proceedings*

¶ 6        The evidence presented at trial essentially consisted of two versions of events. Both parties agreed that shortly before midnight on July 15, 2009, dozens of gunshots were fired in the vicinity of 115th Street and Yale Avenue in Chicago. Chicago police officer Patrick Kinney (Kinney) and sergeant Tyrone Pendarvis (Pendarvis), who were in the area conducting field interviews, heard the gunshots and drove toward them. According to the officers, when they reached 116th Street and Yale Avenue, they observed several individuals waving their arms and pointing. The officers stopped and proceeded in the direction they were pointing, with Pendarvis walking along a side drive next to a house and Kinney entering the yard next door.

¶ 7 When Pendarvis reached the back of the house, he observed two men, one of whom he identified as defendant, holding firearms equipped with extended clips and walking toward him. Pendarvis identified himself as a police officer and ordered them to drop their weapons. One of the men, however, raised his gun in Pendarvis' direction, at which point Pendarvis fired his weapon and both men jumped over a fence and fled northbound, into the yard Kinney had entered. When Kinney observed the men, he identified himself as a police officer and ordered them to drop their weapons. Defendant turned his gun in Kinney's direction, and Kinney fired several shots from 5 to 10 feet away, hitting defendant in the forearm. Defendant fell to the ground and commenced crawling northbound toward a fence, while the other man dropped his weapon, jumped over the fence, and ran, with Pendarvis in pursuit. Kinney continued pointing his firearm at defendant, then issued a distress call over his radio when civilians began approaching him. Pendarvis abandoned his chase and returned to the scene, where numerous other officers also responded and secured the area. The State's witnesses testified that a cell phone, a piece of paper, a magazine with live rounds of ammunition, and three handguns were recovered from the scene. Defendant's blood was found on the cell phone and the magazine, but no fingerprints or DNA were found on any of the firearms, and defendant tested negative for gunshot residue.

¶ 8 According to defendant and the witnesses testifying on his behalf, the gunfire occurred while a number of people, including defendant, were attending a "going away" party near 116th Street and Yale Avenue. Upon hearing the gunshots, the party's participants scattered and sought cover. After the shooting stopped, the participants emerged, and defendant commenced searching for his 14-year-old son, who had been present at the party. Defendant moved across the street, to the same area where the police officers would shortly search. At the same time,

defendant called his girlfriend, who had intended to attend the party, to inform her of the gunfire and to tell her not to come. While defendant was on the phone with his girlfriend, he heard someone shout " 'police' " and he was shot. According to defendant and his witnesses, defendant did not have a firearm.

¶ 9    The jury ultimately found defendant guilty of aggravated assault of a peace officer, unlawful use of a weapon by a felon (firearm ammunition) and unlawful use of a weapon by a felon (firearm). Defendant was sentenced to concurrent terms of 12 years on each of the unlawful use of a weapon counts and three years on the aggravated assault of a peace officer count. Defendant appealed his conviction, challenging the rulings on two motions *in limine* and the sufficiency of the evidence, and we affirmed. See *Atkins*, 2016 IL App (1st) 151221-U.

¶ 10                    *Postconviction Proceedings*

¶ 11    In 2017, defendant, through the same counsel who represented him on appeal, filed a postconviction petition, alleging ineffective assistance of trial counsel and asserting defendant's actual innocence. Specifically, in his petition, defendant alleged that (1) trial counsel failed to interview or call key witnesses to testify to defendant's innocence, including Michael Carr, who could have testified that defendant did not possess a firearm; (2) trial counsel failed to consult or retain an expert in blood-splatter analysis; (3) trial counsel failed to adequately investigate the case, including the failure to "adequately utilize[ ]" phone records that could have demonstrated defendant was holding a phone at the time he was shot; (4) trial counsel failed to adequately explain plea offers from the State, including failing to inform defendant that the State would be seeking an enhanced sentence; (5) the evidence as presented

at trial was insufficient to convict defendant; and (6) defendant was actually innocent of the charges.

¶ 12    Attached to the postconviction petition was defendant's affidavit, which raised 22 claims of ineffective assistance of trial counsel. Also attached to the petition was an affidavit[1] from Michael Carr, which provided that Carr had spoken to defendant after the gunfire; that Carr observed the police officers walk toward the yard in which defendant had gone to search for his son; that Carr and his friend "Corny" ran to the yard upon hearing a gunshot, where they observed the police officer pinning defendant to the ground; that Carr and Corny informed the police that defendant was not the shooter but was a party guest; and that defendant did not possess a gun at any time.

¶ 13    The petition was docketed and advanced to the second stage, and the State subsequently filed a motion to dismiss.[2] During argument on the motion to dismiss, defendant's counsel claimed that phone records "would have demonstrated that at the very time of the shooting," defendant was on the phone with his girlfriend, which would have corroborated the trial testimony to that effect. In response, the State argued that defendant's claims concerning the phone records appeared only in defendant's affidavit, not in the petition itself,[3] and that defendant had the burden of attaching the phone records to the petition, which he did not do.

---

[1] The version of the affidavit contained in the record on appeal is unsigned and not notarized. During the initial court date on the petition, however, defendant's counsel indicated that he had filed a motion to amend the petition to add a signed, notarized copy of the affidavit, which the circuit court granted.

[2] The motion to dismiss is not contained in the record on appeal.

[3] We note that defendant's petition is somewhat confusingly drafted. There are three "claims" set out via headings: trial counsel's failure to conduct a meaningful investigation in failing to interview or call key witnesses, trial counsel's failure to inform defendant that the State was seeking an enhanced sentence, and actual innocence. In the "introduction" section of the petition, however, defendant included additional allegations of ineffective assistance, which we have set out above, including the use of phone records.

¶ 14    The circuit court dismissed the petition on January 8, 2020. With respect to Carr, the court found that there was no evidence that counsel had failed to interview him, and that the choice of whether to call a particular witness to testify was one of trial strategy. The court further found that his testimony also would have been cumulative, as a number of defense witnesses testified that defendant was unarmed at the time. With respect to Cornelius Moore, another witness defendant claimed should have been interviewed, the court found that defendant had failed to sufficiently allege the substance of Moore's testimony. Similarly, the court found defendant's claims as to other witnesses was not adequately supported by affidavits showing their potential testimony.

¶ 15    With respect to defendant's claims about the phone records, the circuit court found that defendant failed to establish that the alleged evidence still exists or would actually show that he was on the phone at the relevant time. The circuit court found that defendant "has not attached the referenced phone records, alleged that he has been [un]able to obtain said records, or confirmed that his cell phone carrier still has these records more than a decade later." The circuit court therefore found that independent corroboration of defendant's claims as to what the records would have shown would not be possible at a later evidentiary hearing.

¶ 16    With respect to defendant's claims about the failure of counsel to inform him that the State was seeking an extended sentence, the circuit court found that defendant did not actually face an extended sentence, so he was unable to show any prejudice from any alleged error.

¶ 17    Finally, the circuit court found that defendant's claims of actual innocence failed, as defendant failed to show any newly-discovered evidence.

¶ 18    Defendant filed a timely notice of appeal, and this appeal follows.

¶ 19                                        ANALYSIS

¶ 20        On appeal, defendant contends that postconviction counsel provided him unreasonable assistance, resulting in the dismissal of his postconviction petition at the second stage. Specifically, defendant contends (1) counsel failed to make necessary amendments to three claims and cure their apparent defects, (2) counsel pursued a claim that was positively rebutted by the record, and (3) counsel "adopted a meritless legal theory that undermined a claim."

¶ 21                              *Reasonable Assistance Standard*

¶ 22        The Post-Conviction Hearing Act (Act) provides a framework for incarcerated individuals to collaterally attack their convictions by establishing the substantial denial of a constitutional right during trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2018). Claims are limited to those that were not and could not have been previously litigated. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Proceedings under the Act occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines whether a petition is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2018). At the second stage, the court may appoint counsel to represent an indigent defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122-4, 122-5 (West 2018). If the court appoints counsel, appointed counsel is required to file a certificate showing that counsel has consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments. *People v. Cotto*, 2016 IL 119006, ¶ 27; Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation will the defendant proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2018).

The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. *Cotto*, 2016 IL 119006, ¶ 24. *De novo* consideration means that the reviewing court performs the same analysis the circuit court would perform and owes no deference to the lower court's judgment or reasoning. *People v. Begay*, 2018 IL App (1st) 150446, ¶ 34.

¶ 23     It is well established that there is no constitutional right to assistance of counsel during postconviction proceedings. *Cotto*, 2016 IL 119006, ¶ 29. Our supreme court has, therefore, explained that the right to assistance of counsel in postconviction proceedings is " 'a matter of legislative grace' " and a defendant is guaranteed only the level of assistance provided by the Act. *Id.* (quoting *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)). Our supreme court has further interpreted the Act as providing a postconviction petitioner with "reasonable" assistance. *Hardin*, 217 Ill. 2d at 299; see also *Cotto*, 2016 IL 119006, ¶ 30; *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990). When appointed counsel files a certificate under Rule 651(c), there is a rebuttable presumption that counsel provided reasonable assistance. *People v. Quezada*, 2022 IL App (2d) 210076, ¶ 14. This "reasonable assistance" requirement, however, applies to privately retained postconviction counsel as well, including during both the first and second stages of postconviction proceedings. *Cotto*, 2016 IL 119006, ¶ 32.

¶ 24     Our supreme court has never expressly set forth a standard for "reasonable assistance," apart from the requirements contained in Rule 651(c). *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 58. In *Zareski*, however, a different panel of this court found that, where a defendant is represented by retained counsel, a "*Strickland*-like analysis" (*Strickland v. Washington*, 466 U.S. 668 (1984)) is appropriate. *Zareski*, 2017 IL App (1st) 150836, ¶ 59. Thus, under the *Zareski* court's view, a reviewing court should examine both whether postconviction counsel should have presented a particular claim, as well as whether postconviction counsel's failure

8

to do so caused prejudice. *Id.* ¶ 61. This is the analysis that the State urges us to perform on appeal. Defendant, by contrast, claims that such an analysis improperly requires the reviewing court to opine on the merits of the postconviction petition's underlying claims, sometimes without the benefit of a sufficient record. As discussed further below, we agree with defendant that a consideration of the prejudicial effect of postconviction counsel's conduct without engaging in speculation is effectively impossible in certain cases. Since our analysis on one such case is dispositive, we have no need to further discuss whether consideration of prejudice is appropriate in evaluating claims of ineffective assistance of postconviction counsel.

¶ 25                          *Failure to Attach Phone Records*

¶ 26        On appeal, defendant contends that one instance of postconviction counsel's ineffectiveness was his failure to attach phone records to the postconviction petition. At trial, defendant's theory was that he was on the phone with his girlfriend after the initial gunfire, and that the police mistook his cell phone for a gun, leading Kinney to shoot him. Defendant and Courtney Bell, his girlfriend at the time, both testified to that effect at trial. Trial counsel, however, never introduced defendant's phone records into evidence, despite the fact that they were in counsel's possession. In his postconviction petition, defendant alleged that trial counsel was ineffective in failing to "adequately utilize[ ]" the phone records to corroborate the testimony that defendant was on the phone at the time he was shot. Postconviction counsel, however, never attached the phone records in support of this argument.

¶ 27        A postconviction petition that is unsupported by affidavits, records, or other evidence in support of the petition "renders the petition insufficient to require an evidentiary hearing." *People v. Johnson*, 154 Ill. 2d 227, 240 (1993). Generally, where a postconviction petition is unsupported by affidavits or other documents, the circuit court may presume that

postconviction counsel "made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *Id.* at 241. This presumption does not apply, however, where it is "flatly contradicted by the record." *Id.*; *People v. Waldrop*, 353 Ill. App. 3d 244, 250 (2004); *People v. Johnson*, 2022 IL App (1st) 190258-U, ¶ 37. In this case, the record shows that the phone records at issue existed at the time of trial, and were in trial counsel's possession. There is no indication from the record that postconviction counsel—who was the same counsel representing defendant during his direct appeal—attempted to obtain them and was unable to do so. Instead, it appears that postconviction counsel was inexperienced at postconviction proceedings[4] and was unaware that defendant's affidavit alone was insufficient to support his claim. The failure to be aware of the Act's basic requirements with respect to attaching evidentiary support to the claims alleged in the petition cannot be considered "reasonable assistance." See *Johnson*, 2022 IL App (1st) 190258-U, ¶¶ 38-39 (finding postconviction counsel did not provide reasonable assistance where "it is quite apparent that counsel was not familiar with the record or the basic requirements of the Act").

¶ 28     The State contends that postconviction counsel provided defendant with reasonable assistance, as the "*Strickland*-like analysis" suggested by the *Zareski* court shows that defendant's claim would have failed even if the records had been attached. We note, however, that the *Zareski* court's approach does not easily lend itself to a situation such as the one present in the case at bar, where the postconviction petition alleges ineffective assistance of trial counsel, but postconviction counsel was allegedly ineffective for failing to attach evidentiary support for that argument. In that case, a "*Strickland*-like analysis" would require us to

---

[4] During the court hearing at which the petition was docketed, postconviction counsel informed the circuit court that he was "new at this" and was unfamiliar with what "docketing" the petition meant.

speculate (1) what the missing documents would show and (2) the effect of those missing documents on the postconviction petition, which would necessarily lead us to considering the merits of the underlying ineffective assistance of trial counsel claim, including (3) the reasonableness of trial counsel's conduct and (4) any prejudicial effect of that conduct. See *People v. Lewis*, 2022 IL 126705, ¶ 44 (to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice).

¶ 29    Thus, with respect to defendant's claim regarding the phone records, we would need to find (1) the phone records would have corroborated that defendant was on the phone and (2) inclusion of those records in the postconviction proceedings would have constituted a substantial showing of ineffective assistance of trial counsel, as (3) failing to introduce the records at trial was not a matter of trial strategy and (4) the omission of the records had an effect on the outcome of the trial. We would be required to engage in this analysis all without the benefit of viewing the phone records themselves. There is simply no way to determine whether a defendant is prejudiced by the failure to attach material when we have no way of knowing what the missing material shows. See *Johnson*, 2022 IL App (1st) 190258-U, ¶ 41 (on review of a second-stage dismissal, finding that "we simply cannot tell on this record whether the outcome might have been different if [the defendant] had received reasonable postconviction representation").

¶ 30    Instead, we believe the appropriate approach is to remand this case to the circuit court for additional second-stage proceedings. A different panel of this court recently did the same in *Johnson*, a case that is factually similar to the case at hand. There, as in this case, the defendant claimed that postconviction counsel was ineffective in failing to attach evidentiary support for

his claim of ineffective assistance of trial counsel. *Id.* ¶ 30. Specifically, the defendant claimed that trial counsel was ineffective for not calling an expert witness in support of his insanity defense. *Id.* ¶ 40. On appeal, the *Johnson* court found that it was unable to determine whether the failure to support the claims prejudiced the defendant, as there was no information as to whether such a witness existed, so it was impossible to determine whether the defendant was prejudiced by the lack of reasonable assistance. *Id.* ¶ 41. Instead, the court remanded the case to the circuit court for additional second-stage proceedings, during which new counsel would be able to supplement the postconviction record with any additional evidence or affidavits that provided support for the claims in the petition. *Id.* ¶ 43.

¶ 31    We find that a similar result is warranted here. As noted, we simply cannot determine whether defendant was prejudiced by the failure to attach the phone records, as we do not know whether the phone records support his claims of ineffective assistance of trial counsel. Remanding to the circuit court for additional second-stage proceedings will permit defendant to supplement his petition with evidentiary support for his claim and will permit the circuit court to then determine if the properly-supported claim makes a substantial showing of a constitutional violation, as is necessary to proceed to a third-stage evidentiary hearing. As we are remanding for further proceedings, we have no need to consider the quality of counsel's assistance with respect to the other allegedly deficient claims. On remand, however, defendant should also be permitted to supplement the record with any other documents supporting those claims.

¶ 32                                   CONCLUSION

¶ 33    For the reasons set forth above, the circuit court's dismissal of defendant's postconviction petition is reversed. Postconviction counsel did not provide reasonable assistance in failing to

attach phone records in support of defendant's claims of ineffective assistance of trial counsel, where the record shows that such records existed and were in trial counsel's possession at the time of trial. The case is remanded to the circuit court for further second-stage proceedings, at which time defendant will be permitted to supplement his petition with additional evidentiary material to support the claims alleged in the petition.

¶ 34        Reversed and remanded.